**Matthew S. Parmet** (CSB # 296742)
matt@parmet.law
**PARMET PC**
340 S. Lemon Ave., #1228
Walnut, CA 91789
phone  310 928 1277

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL COTTRILL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MDM SERVICES CORPORATION and MDM SOLUTIONS LLC,<br><br>Defendants. | Case No. 8:21-cv-00817<br><br>**Plaintiff's Original Collective Action Complaint for Damages**<br><br>1. **Failure to pay overtime compensation (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*)** |

## SUMMARY

1. Plaintiff Michael Cottrill brings this lawsuit to recover unpaid overtime wages and other damages from Defendants MDM Services Corporation and MDM Solutions LLC (collectively, MDM) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*.

2. Cottrill worked for MDM as an inspector.

3. Cotrill's duties and the duties of the Day Rate Inspectors (as defined below) included inspecting the interstate pipelines to ensure the safe transportation of goods.

4. Cottrill and the Day Rate Inspectors regularly worked more than 40 hours a week.

5. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

6. Instead of paying overtime as required by the FLSA, MDM pays these workers a flat amount for each day worked (a "day rate") without overtime compensation.

7. MDM never paid Cottrill or the Day Rate Inspectors a guaranteed salary.

8. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. (29 U.S.C. § 216(b).)

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because MDM Services Corporation and MDM Solutions LLC both maintain their headquarters in this District and Division.

11. Specifically, MDM Services Corporation and MDM Solutions LLC both maintain their headquarters in Costa Mesa, California, which is in this District and Division.

## PARTIES

12. Cottrill worked for MDM as an Inspector from approximately March 2019 until December 2020.

13. Throughout his employment with MDM, MDM paid Cottrill a day rate with no overtime compensation.

14. Cottrill's written consent to be a party plaintiff is attached as Exhibit 1.

15. Cottrill brings this action on behalf of himself and all other similarly situated Day Rate Inspectors who were subjected to MDM's day rate pay scheme.

16. MDM paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek in accordance with the FLSA.

17. The collective of similarly situated employees or Day Rate Inspectors sought to be certified is defined as follows:

> **All current and former interstate pipeline inspectors who worked for MDM Services Corporation and/or MDM Solutions LLC who were paid a day rate with no overtime at any time during the past three years (Day Rate Inspectors).**

18. The Day Rate Inspectors are easily ascertainable from MDM's business and personnel records.

19. MDM Services Corporation is a corporation organized under the laws of California.

20. MDM Services Corporation maintains its headquarters or principal place of business in California.

21. MDM Services Corporation may be served with process by serving its registered agent: **Cynthia Williams, 301 2nd Street, Huntington Beach, CA 92648**, or by any other method authorized by law.

22. MDM Solutions LLC is a limited liability company organized under the laws of Colorado.

23. MDM Solutions LLC maintains its headquarters and principal place of business in California.

24. At all relevant times, one or more of MDM Solutions LLC's ultimate members were and are citizens of California.

25. MDM Solutions LLC may be served with process by serving its registered agent: **Cynthia Williams, 301 2nd Street, Huntington Beach, CA 92648**, or by any other method authorized by law.

26. MDM Services Corporation and MDM Solutions LLC jointly employ Cottrill and the Day Rate Inspectors for purposes of the FLSA.

## COVERAGE UNDER THE FLSA

27. At all relevant times, MDM has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

28. At all relevant times, MDM has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

29. At all relevant times, MDM has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). MDM has and has had employees engaged in commerce or in the production of goods for

commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

30. In each of the last three years, MDM, together, has had annual gross volume of sales made or business done of at least $500,000.

31. At all relevant times, Cottrill and the Day Rate Inspectors were engaged in commerce or in the production of goods for commerce.

32. Indeed, Cottrill and the Day Rate Inspectors were engaged in foreign and/or interstate commerce and work on the channels and instrumentalities of interstate commerce, including but not limited to oil and gas pipelines across the country.

33. MDM uniformly applied its policy of paying the Day Rate Inspectors, including Cottrill, a day rate with no overtime compensation.

34. MDM applied this policy regardless of any alleged individualized factors such as precise inspector job position, pipeline, job duties/responsibilities, client assignments, or geographic location.

35. By paying its inspectors a day rate with no overtime compensation, MDM violated (and continues to violate) the FLSA's requirement that it pay its employees overtime compensation at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

36. As a result of this policy, Cottrill and the Day Rate Inspectors do not receive overtime as required by the FLSA.

37. MDM's uniform compensation scheme of paying its employees a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. (29 U.S.C. § 207(a), (e).)

**FACTUAL ALLEGATIONS**

38. MDM bills itself as a pipeline industry leader in "vetting, staffing, and managing 600-800 Inspection/Construction Management personnel[,]" including: Construction Managers, Chief Inspectors, Assistant Chief Inspectors, Senior Welding Inspectors, NDT/NDE Auditors, Certified Welding Inspectors, Certified API Inspectors, Safety Inspectors, E&I Inspectors, NACE Inspectors, Utility Inspectors, Non-Certified Welding Inspectors, Non-Certified Coating Inspectors, Non-

Certified Tank Inspectors, Tie-In Inspectors, HDD Inspectors, Vendor/Mill Inspectors, Field Office Administration, Materials Inspectors, Distribution Inspectors, HDPE Inspectors, and Routing Inspectors.[1] (MDM, Inspection & Construction Management, https://mdmcorp.com/services/inspection/ (last visited April 30, 2021).)

39. To complete its business objectives, MDM hires Pipeline Inspectors, such as Cottrill, to inspect, observe, and test the workmanship and materials for compliance with its clients' policies and procedures, including the plans, specifications and applicable codes throughout the United States.

40. Cottrill and the Day Rate Inspectors provide necessary inspection services to oil and gas pipelines across the country.

41. Indeed, Cottrill and the Day Rate Inspectors inspect the work on oil and gas pipelines in order to ensure the pipelines are constructed in accordance with MDM's clients' standards, protocols, and construction plans, as well as federal and state regulations.

42. MDM's clients are companies that own and operate pipelines.

43. MDM's clients rely on MDM to provide inspection services so it the pipelines can safely transport goods.

44. MDM's clients typically maintain pipelines that enable the movement of goods and services across state lines as a stream of interstate commerce.

45. Without the inspection services Cottrill and the Day Rate Inspectors provide to MDM and its clients, oil and gas would not be able to travel across state lines through the pipelines on which Cottrill and the Day Rate Inspectors work.

46. Indeed, the inspection services Cottrill and the Day Rate Inspectors provide to MDM and its clients is necessary to keep the intra- and interstate flow of oil and gas.

47. Cottrill and the Day Rate Inspectors, in part, ensure MDM's client's appropriate compliance with state and federal safety and regulatory requirements.

48. The Pipeline and Hazardous Materials Safety Administration sets federal standards that pipelines must comply with in their operation.

---

[1]

49. Cottrill and the Day Rate Inspectors assist MDM's clients in meeting all operation requirements set forth by the Pipeline and Hazardous Materials Safety Administration on a federal level and related state agencies.

50. The inspection services Cottrill and the Day Rate Inspectors provide to MDM and its clients immediately and necessarily precedes the action of oil and gas flowing along interstate pipelines across the country.

51. Cottrill and the Day Rate Inspectors' work is centered on ensuring the safe transport of oil and gas along intra- and interstate pipelines across the country by making sure the pipelines necessary to transport oil and gas to its ultimate destination are constructed and/or repaired in accordance with established standards, procedures, plans, and regulations.

52. Many of these individuals worked for MDM on a day rate basis (without overtime pay).

53. These workers make up the proposed Putative Class of Day Rate Inspectors.

54. While exact job titles and job duties may differ, Cottrill and the Day Rate Inspectors are subjected to the same or similar illegal pay practices for similar work.

55. For example, Cottrill worked for MDM as a Coating Inspector and QC Inspector from approximately March 2019 until December 2020.

56. Throughout his employment with MDM, MDM paid him on a day rate basis with no overtime pay.

57. Cottrill and the Day Rate Inspectors work for MDM under its day rate pay scheme.

58. Cottrill and the Day Rate Inspectors do not receive a salary.

59. MDM only pays Cottrill and the Day Rate Inspectors their day rate for the actual days they worked.

60. Despite requiring Cottrill and the Day Rate Inspectors submit timesheets to MDM for approval, MDM requires them to list only 10 or 12 hours for each day they worked, regardless of the actual number of hours they worked in a day or workweek.

61. If Cottrill and the Day Rate Inspectors did not work, they did not get paid.

62. Cottrill and the Day Rate Inspectors receive a day rate.

63. Cottrill and the Day Rate Inspectors do not receive overtime pay.

64. This is despite the fact that Cottrill and the Day Rate Inspectors often worker 12+ hours a day, for as many as seven days a week, for weeks at a time.

65. For example, Cottrill received a day rate of approximately $650 (including various per diems, such as mileage and for lodging) for each day he worked for MDM.

66. Although he typically worked seven days a week, often for more than 12 hours a day, MDM never paid Cottrill any overtime compensation.

67. Cottrill and the Day Rate Inspectors work in accordance with the schedule set by MDM and/or its clients.

68. Cottrill's work schedule is typical of the Day Rate Inspectors.

69. Cottrill and the Day Rate Inspectors received the day rate regardless of the number of hours they worked, and even if they worked more than 40 hours in a workweek.

70. MDM controls Cottrill and the Day Rate Inspectors' pay.

71. Likewise, MDM and/or its clients control Cottrill and the Day Rate Inspectors' work.

72. MDM requires Cottrill and the Day Rate Inspectors to follow MDM and/or its clients' policies and procedures.

73. Cottrill and the Day Rate Inspectors' work must adhere to the quality standards put in place by MDM and/or its clients.

74. Cottrill and the Day Rate Inspectors are not required to possess any unique or specialized skillset (other than that maintained by all other inspectors in their respective positions) to perform their job duties.

75. At all relevant times, MDM and/or its clients maintained control, oversite, and direction of Cottrill and the Day Rate Inspectors, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

76. Cottrill and the Day Rate Inspectors do not have the power to hire, fire, or discipline any employees.

77. Cottrill's working relationship with MDM is similar to that of the Day Rate Inspectors.

78. MDM knows Cottrill and the Day Rate Inspectors work for more than 12 hours a day, for as many as seven days a week.

79. MDM's records reflect the fact that Cottrill and the Day Rate Inspectors regularly work far in excess of 40 hours in certain workweeks.

80. MDM does not pay Cottrill or the Day Rate Inspectors overtime for hours worked in excess of 40 in any of those weeks.

81. Instead, MDM pays Cottrill and the Day Rate Inspectors on a day rate basis.

82. MDM controls all the significant or meaningful aspects of the job duties Cottrill and the Day Rate Inspectors perform.

83. MDM exercises control over the hours and locations Cottrill and the Day Rate Inspectors work, the tools and equipment they use, the reports they provide, the hours they record on their timesheets, and the rates of pay they receive.

84. Very little skill, training, or initiative is required of Cottrill and the Day Rate Inspectors to perform their job duties.

85. Indeed, the daily and weekly activities of Cottrill and the Day Rate Inspectors are routine and largely governed by standardized plans, procedures, and checklists created by MDM and/or its clients.

86. Virtually every job function is predetermined by MDM (or its clients), including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

87. MDM prohibits Cottrill and the Day Rate Inspectors from varying their job duties outside of the predetermined parameters and requires Cottrill and the Day Rate Inspectors to follow MDM's (or its clients') policies, procedures, and directives.

88. All of MDM's Day Rate Inspectors perform similar inspection job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

89. All of MDM's Day Rate Inspectors work similar hours and are denied overtime as a result of the same illegal pay practice.

90. All of MDM's Day Rate Inspectors work in excess of 40 hours each week and often work 84+ hours in a workweek.

91. MDM uniformly denies Cottrill and the Day Rate Inspectors overtime for the hours they work in excess of 40 hours in a single workweek.

92. Cottrill and the Day Rate Inspectors are not employed on a salary basis.

93. Cottrill and the Day Rate Inspectors do not, and have never, received guaranteed weekly compensation from MDM irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

94. MDM's policy of paying Cottrill and the Day Rate Inspectors a day rate with no overtime compensation violates the FLSA because it deprives Cottrill and the Day Rate Inspectors of overtime for the hours they work in excess of 40 hours in a single workweek.

95. MDM knew Cottrill and the Day Rate Inspectors worked more than 40 hours in a week.

96. MDM knew, or showed reckless disregard for whether, the Day Rate Inspectors were not exempt from the FLSA's overtime provisions.

97. Nonetheless, MDM failed to pay Cottrill and the Day Rate Inspectors overtime.

98. MDM knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

**COLLECTIVE ACTION ALLEGATIONS**

99. Cottrill brings this claim as a collective action under the FLSA.

100. The Day Rate Inspectors were victimized by MDM's pattern, practice, and/or policy which is in willful violation of the FLSA.

101. Numerous other Day Rate Inspectors worked with Cottrill and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

102. Based on his experiences with MDM, Cottrill is aware that MDM's illegal practices were imposed on the Day Rate Inspectors.

103. The Day Rate Inspectors are similarly situated in all relevant respects.

104. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

105. The illegal day rate policy that MDM imposes on Cottrill is likewise imposed on all Day Rate Inspectors.

106. Numerous individuals are victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

107. The Day Rate Inspectors are similarly denied overtime when they work more than 40 hours per week.

108. The overtime owed to Cottrill and the Day Rate Inspectors will be calculated using the same records and using the same formula.

109. Cottrill's experiences are therefore typical of the experiences of the Day Rate Inspectors.

110. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

111. MDM is liable under the FLSA for failing to pay overtime to Cottrill and the Day Rate Inspectors.

112. Consistent with MDM's illegal day rate policy, Cottrill and the Day Rate Inspectors were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

113. As part of their regular business practices, MDM intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Cottrill and the Day Rate Inspectors.

114. MDM's illegal day rate policy deprived Cottrill and the Day Rate Inspectors of the premium overtime wages they are owed under federal law.

115. MDM is aware, or should have been aware, that the FLSA required them to pay Cottrill and the Day Rate Inspectors overtime premiums for all hours worked in excess of 40 hours per workweek.

116. There are many similarly situated Day Rate Inspectors who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

117. This notice should be sent to the Day Rate Inspectors pursuant to 29 U.S.C. § 216(b).

118. Those similarly situated employees are known to MDM, are readily identifiable, and can be determined through MDM's business records.

### CAUSE OF ACTION—VIOLATION OF THE FLSA

119. Contrill incorporates all other allegations.

120. Cottrill brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

121. MDM employed, or employs, Cottrill and the Day Rate Inspectors within the meaning of the FLSA.

122. By failing to pay Cottrill and the Day Rate Inspectors overtime when they worked in excess of 40 hours in a workweek, MDM has violated, and is violating, Section 7 of the FLSA. (29 U.S.C. § 207.)

123. MDM failed to pay Cottrill and the Day Rate Inspectors a guaranteed salary or on a "salary basis."

124. MDM failed to pay Cottrill and the Day Rate Inspectors overtime as required by the FLSA.

125. Instead, MDM paid Cottrill and the Day Rate Inspectors a day rate with no overtime.

126. MDM knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Inspectors overtime compensation.

127. MDM's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

128. Accordingly, Cottrill and the Day Rate Inspectors are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

**RELIEF SOUGHT**

WHEREFORE, Cottrill, individually and on behalf of the Day Rate Inspectors respectfully requests that this Court grant the following relief:

a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Day Rate Inspectors to permit them to join this action by filing a written notice of consent;

b. A judgment against MDM awarding Cottrill and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c. An order awarding attorneys' fees, costs, and expenses;

d. Pre- and post-judgment interest at the highest applicable rates; and

e. Such other and further relief as may be necessary and appropriate.

Date: May 3, 2021

Respectfully submitted,

**PARMET PC**

By: /s/ Matthew S. Parmet
    **Matthew S. Parmet**

**Attorneys for Plaintiff**